A. F. OKEY, Appellee, v. D. S. SIGLER *et al.*, Appellants.

1. **Sureties:** RELEASE : AGREEMENT FOR STAY OF EXECUTION. Where in an action upon a promissory note against the maker and his surety an agreement was entered into between the plaintiff and maker of the note, after entry of default and judgment against the surety that judgment should be entered against defendants, but that the maker should have a stay of execution thereon until a date named, which was nearly nine months thereafter, and more than six months after judgment was in fact rendered against the maker of said note, *held*, in an action by the surety to enjoin the enforcement of an execution against his property to satisfy said judgment, after the expiration of the time mentioned in said agreement, that the stay of execution granted to the maker of said note under said agreement, without the knowledge or consent of the surety, operated to release the surety from liability on said judgment; that the burden was upon the payee to prove the surety's assent thereto, and that the evidence herein failed to establish it.

2. ———— : ———— : ———— : PRACTICE, The order for a stay of execution in said cause under the above agreement having been made after an entry of default and judgment on the note against the surety, the latter was not bound thereby, and no presumption that he consented thereto arises from the fact that the record shows no objection on his part to such order.

3. ———— : ———— : ———— : COMPUTATION OF TIME. The time of the stay of execution provided for by Code, section 3061, is to be computed from the date on which judgment is rendered, and not from the expiration of the ten days allowed for filing a stay-bond.

*Appeal from Adams District Court.*—HON. R. C.
HENRY, Judge.

MONDAY, FEBRUARY 2, 1891.

ACTION in equity to restrain an execution sale, and
to cancel the judgment on which the execution was
issued.   There was a trial upon the merits, and a decree
in favor of plaintiff.   The defendants appeal.—*Affirmed.*

*Dale & Brown* and *T. M. Stuart,* for appellants.

*H. T. Granger,* for appellee.

ROBINSON, J.—On the twentieth day of March,
1880, one O. F. Parsons, as principal, and the plaintiff,
as surety, made and delivered to defendant Sigler their
promissory note for the sum of five hundred dollars.
In October, 1880, Sigler brought suit against the plaintiff
and Parsons in the district court of Adams county, to
recover the amount due on the note.   Judgment by
default was rendered against the plaintiff on the twenty-
third day of October, 1880, for the sum of five hundred
and twenty-nine dollars and fifty-five cents, and costs.
Parsons appeared and filed an answer which set up
certain alleged defenses and a counterclaim.   On his
application, the cause was continued as to him.   The
cause was numbered 1,122.   At that time there were two
causes pending in the circuit court of Adams county in
which Sigler was plaintiff and Parsons was defendant,
numbered, respectively, 1,267 and 1,292.   On the
eleventh day of January, 1881, Sigler and Parsons
entered into an agreement entitled as in case, number
1,292, of which the following is a copy:

"It is hereby agreed that judgment shall be entered
in this case for the full amount thereof, without attor-
ney's fees or costs to defendant, and the mortgage
duly foreclosed as prayed for in plaintiff's petition.   It
is also agreed that judgment shall be entered in full
amount claimed in case number 1,267, of this court, and
pending on appeal, wherein D. S. Sigler is plaintiff and

O. F. Parsons and L. L. Parsons were defendants against all of said defendants, and surety on appeal-bond. Also the case of D. S. Sigler, plaintiff, against O. F. Parsons and A. F. Okey in the district court of Adams county, Iowa, in the amount claimed, judgment shall be entered by the clerk of said district court against all defendants therein as claimed in plaintiff's petition. It is expressly agreed that no execution shall issue in the district court case until October 1, 1881, and to not issue in case number 1,267, as to Parsons, until October 1, 1881, and to not issue in the case number 1,292, circuit court, until January 1, 1882.

"[ Signed ]          O. F. PARSONS,
"L. L. PARSONS,
"D. S. SIGLER."

In pursuance of that agreement, judgment was rendered against O. F. Parsons in case, number 1,122, on the twenty-fourth day of March, 1881, for the amount due, with the provision that he should have a stay of execution, without giving bond, until the first day of October, 1881. In December, 1888, an execution was issued on the judgment against plaintiff, and placed in the hands of defendant Pomeroy, as sheriff, for service. He proceeded to serve the execution by levying it upon land owned by the plaintiff.

It is claimed by the plaintiff that the agreement for judgment and a stay of execution was made, and the stay of execution was granted, without his knowledge or consent. This is denied by defendants, who contend: *First*, that plaintiff knew of the agreement, and that it was made with his consent; *second*, that, as plaintiff was a party defendant in case number 1,122, the presumption of law is conclusive that he consented to all the orders made to which he did not object; *third*, that plaintiff has been fully indemnified for all sums he may be required to pay on the judgment; *fourth*, that the stay of execution granted to Parsons was no longer than that allowed by law, hence the agreement did not operate to extend the time of payment given by statute, and, therefore, did not operate to relieve the plaintiff.

A temporary injunction to restrain the enforcement of the judgment against the plaintiff was issued and served. On the first hearing the district court found in favor of the plaintiff, and granted him the relief demanded, which included making the injunction perpetual, and the cancellation of the judgment against the plaintiff.

I.  The evidence as to the knowledge of the plaintiff of the agreement, and of his consent thereto, is conflicting. The plaintiff denies that he had any knowledge of the agreement, and he denies that he ever assented to it, or to the granting of the stay of execution. He is fully corroborated by the testimony of Parsons. The further fact appears that he was anxious to have judgment rendered against Parsons, and that he could have derived no benefit from the stay of execution. On the other hand, R. A. Moore testifies that he was the attorney of Sigler in obtaining the judgment against plaintiff and Parsons in the case in the district court; that it is his recollection that Okey and Parsons discussed the subject-matter of the agreement with him before it was finally made ; that the provision in regard to the case in the district court was inserted at Okey's suggestion ; and that the matter was fully talked over with Okey before the agreement was filed and assented to by him. The fact that Okey was surety only on the note was known, and, if the conversations related by Moore actually occurred, it is strange that he did not require Okey's signature to the agreement, and thus place his assent beyond question. The burden is upon defendants to prove that assent, but we think they have failed to establish it by a preponderance of the evidence.

1. SURETIES: release: agreement for stay of execution.

The appellants insist that Parsons is not a credible witness, and that his testimony should be disregarded ; that Moore is a disinterested witness, and, therefore, that his testimony outweighs that of the plaintiff. But Moore's professional management of the case is somewhat in question, and he naturally desires to have it appear that it was prudent and right. Moreover, we do

not think the testimony of Parsons should be wholly discredited. True, in his answer, filed in the case in the district court, he alleged that Okey had assumed the payment of the note in suit, and that Sigler had agreed to look to him for payment, and to release Parsons; that the consideration of that agreement on the part of Okey was certain promissory notes delivered to him by Parsons. It is also true that in his affidavit for a continuance, filed in the case named in October, 1880, he stated that he could prove those allegations of his answer by a witness named, and that a continuance was granted for that purpose. It is also true that Parsons now states that he never gave Okey any indemnity to secure him against loss on account of the note on which the judgment in suit was rendered, but his attention does not seem to have been drawn to the apparent conflict between his answers given in this case and his answer and affidavit in the former case in the district court. It may fairly be presumed in this condition of the record that the conflict was not due to intentional prevarication on his part. It appears that he had other business transactions with Okey in which the latter became his surety, and it is possible that when he filed his answer and made his affidavit he had in mind a transaction which did not apply to the note in suit in that case, and that he subsequently discovered his mistake. However that may be, we are inclined to give some credit to his testimony.

II. It is urged that the plaintiff must be conclusively presumed to have consented to all orders made in

2. —: —: —:   the case of Sigler against himself and Par-
practice.     sons to which he did not object, and that, as the record fails to show any objection on his part to the stay of execution, it must be presumed that he consented to it. Section 3068 of the Code is as follows: " When any court shall render judgment against two or more persons, any of whom is surety for any other in the contract on which judgment is founded, there shall be no stay of execution allowed if the surety object thereto at the time of rendering the judgment,

whereupon it shall be ordered by the court that there
be no stay, unless the surety for the stay of execution
will undertake, specifically, to pay the judgment in
case the amount thereof cannot be levied of the prin-
cipal defendant." It was said in *Hershler v. Reynolds*,
22 Iowa, 154, in which the rights of sureties in a
replevin bond were under consideration, that it was
competent for the parties to the action to provide by
agreement for a judgment and stay of execution, unless
the sureties objected at the time the judgment was
rendered. In that case the sureties were held to be
constructively in court when the judgment was ren-
dered, and the stay was for a period of time authorized
by law. In *Chase v. Welty*, 57 Iowa, 230, it was held,
that the surety against whom judgment was rendered
was not released by a stay of execution taken by the
principal debtor without his consent, for the reason that
he did not object to the taking of a stay of execution
when judgment was rendered, as he was authorized to
do by the statute. We are justified in concluding from
the statement of facts in that case that the judgment
was rendered against both principal and surety at the
same time. In this case the surety made default, and
judgment was rendered against him. Such a judgment
was authorized by law. Code, sec. 2550; *Poole v.
Hintrager*, 60 Iowa, 180. The plaintiff was in court
constructively when the judgment against him was ren-
dered, but not afterwards. The case as to him was then
ended. *Ins. Co. v. Duffie*, 67 Iowa, 175. He was not
obliged to remain in court to await the termination of
the suit against his codefendant. He was not in court
when the judgment against Parsons was rendered, in
March, 1881, and was not bound by any proceedings or
orders in the case which were not in harmony with his
liability as surety. That liability could not be extended
by any agreement or order to which he was not a party.
But the judgment which was rendered pursuant to the
agreement between his principal and the plaintiff
provided that execution should not issue before the
first day of October, 1881, or for a period of more than

six months. Conceding, for the purposes of this case, but not deciding, that an agreement providing for a stay of execution for the time authorized by law, and a judgment rendered by virtue of such agreement, would not have released plaintiff from liability, yet it is clear that, under the law as frequently announced by this and other courts, and which we do not understand appellants to question, the plaintiff was released, if the stay granted was for a longer time than that provided by statute.

III. Section 3061 of the Code provides for a stay of execution in certain cases of six months when the sum for which judgment was rendered, inclusive of costs, exceeds the sum of one hundred dollars. The judgment against Parsons was for over five hundred dollars, and appellants contend that, as the statute allows the judgment debtor ten days in which to file a stay-bond, the six months do not commence to run until the bond is filed ; hence, that in this case ten days should be added to the statutory period of six months. If that be the correct interpretation of the statute, the stay granted was no longer than that the statute authorizes for the amount of the judgment. But in our opinion the interpretation suggested is not warranted by the language of the statute. The time of the stay is to be computed from the time of rendering the judgment.

3. ——: ——: ——: computation of time.

IV. It is urged that the evidence shows that plaintiff is fully indemnified against liability for the judgment in controversy. It appears that he has secured indemnity on account of liability incurred as surety for Parsons in another matter, and that he was promised indemnity on account of that in controversy, but that it was never given.

We conclude that an unauthorized extension of time was given to Parsons by reason of which plaintiff was released from liability on the judgment in controversy, and that it should be held for naught. AFFIRMED.